# CHARLESTOWN.

### JOHNSON *v.* McCLUNG.

Submitted January 31, 1885.—Decided October 2, 1885.

(*SNYDER, JUDGE, Absent.)

1. Where a case was tried and a verdict rendered, which was set aside by the court, and a new trial granted, and on the second trial the verdict was for the other party, and judgment rendered thereon, to which a writ of error has been obtained, the appellate court will look to the proceedings on both trials and, if the court below erred in setting aside the first verdict, will without considering the subsequent proceedings in the cause reverse the judgment and enter final judgment on the first verdict.   (p 661.)

2. Sec. 2, of ch. 71 of the Code means, as if written as follows, including the words in parenthesis : "If a covenant or promise be made for the sole benefit of a person with whom it is not made, or (if a covenant or promise is made for the sole benefit of a person) with whom it is made jointly with others, such person may maintain in his own name any action thereon," &c.   (671.)

The opinion of the Court contains a statement of the facts of the case.

*G. A. Blakemore* for plaintiff in error.

*W. H. H. Flick* and *W. F. Dyer* for defendant in error.

*Counsel below.

JOHNSON, PRESIDENT :

Johnson brought his action of covenant in 1875 in the county court of Pendleton county against D. G. McClung, survivor of himself, James B. Anderson, Philip Phares, jr., and D. C. Anderson, describing themselves as partners under the firm name of D. C. Anderson & Co. The writing declared upon provides as follows :

"This agreement made August 22, 1864, between David C. Anderson and Philip Phares, jr., partners under the name and style of D. C. Anderson & Co. and David G. McClung and James B. Anderson : First—Witnesseth, that the said D. C. Anderson & Co. have this day sold to D. G. McClung and J. B. Anderson one half interest in all the machinery, equipments and press at the Belfont Woolen Factory for the sum of $7,500.00. Second—D. G. McClung and J. B. Anderson hereby assume one half the indebtedness for the power, spinner, looms and other machinery purchased by D. C. Anderson & Co. for the sum of $700.00 in specie of Mr. David Johnson," &c.

It is not necessary to set out more of the contract specifically. The third clause provides, that the name of the new firm shall be the same as the old ; the fourth, that the stock of woolen cloth and warp on hand shall be taken by the new firm at cost ; the fifth, that each partner is to contribute his undivided service. It is signed and sealed by Philip Phares, jr., D. C. Anderson, D. G. McClung and J. B. Anderson.

The declaration alleges, that the covenant required the sum of $350.00 to be paid to the plaintiff, and for breach declares, that defendants did not pay the same to "the plaintiff, or to the said Philip Phares, jr., and D. C. Anderson, or to either of them," &c. The defendants pleaded covenants performed. This plea was entered November 13, 1875. The plaintiff replied generally to the plea. On May 11, 1876, the defendant filed a plea, that before the beginning of the suit he had paid the said sum of money described to Philip Phares, jr. and D. C. Anderson, and filed offsets, to the filing of which plea and offsets the plaintiff objected, which objection was overruled. Another plea was filed, that defendant did not covenant to pay the plaintiff, but his covenant was with Philip Phares, jr. and D. C. Anderson. The defendant

replied generally to this plea, &c. The case was tried by a jury March 13, 1877, and a verdict was rendered for the plaintiff for $617.78. · On motion of defendant the verdict was set aside "for reasons appearing to the court;" and a new trial was granted, to which ruling of the court the plaintiff excepted, and asked the court to certify the facts, which was done.

The plaintiff filed with the judge of the circuit court of Pendleton county a petition for a writ of error and *supersedeas*, which was on April 28, 1877, by said judge refused. He then presented a petition to one of the Judges of this Court for a writ of error and *supersedeas*, which was on July 14, 1877, granted.

At a circuit court for said Pendleton county held October 28, 1879, the court dismissed said writ of error and *supersedeas* as improvidently allowed. On November 12, 1879, by consent the case was removed into the circuit court. On June 22, 1881, the case was again tried by a jury and a verdict rendered for the defendant, and the court entered judgment thereon. The plaintiff obtained a writ of error and *supersedeas*.

It is wholly immaterial now to enquire whether the circuit court erred in dismissing the writ of error, as the question is now properly before this Court, whether the county court erred in setting aside the verdict which was for the plaintiff. It is well settled, that, where a case is tried and a verdict is rendered, which is set aside by the court, and a new trial is granted, and on the second trial the verdict is for the other party, and judgment is rendered thereon, to which a writ of error is obtained, the appellate court will look to the proceedings on both trials, and if the court below erred in setting aside the first verdict, the appellate court without considering the subsequent proceedings in the case will reverse the judgment and enter final judgment on the first verdict. *Pleasants* v. *Clements*, 2 Leigh 474 ; *Knox* v. *Garland*, 2 Call. 241 ; *Briscoe* v. *Clark*, 1 Rand. 213 ; *Tyler* v. *Taylor*, 21 Grat. 700.

Did the plaintiff show a cause of action in his declaration ? Could he sue upon the covenant, of which *profert* was made, and which was set forth in his declaration ? It seems to have been well settled, that no action can be maintained

upon a deed *inter partes* by one not a party to the deed; that the right to sue on a covenant was limited to the parties to the deed or their privies. (*Barford* v. *Stucky*, 2 B. & B. 333, 6 Eng. C. L. R. 139 ; *Berkley* v. *Hardy*, 5 B. & C. 355, 11 E. C. L. R. 251 ; *Southhampton & Drummond* v. *Brown*, 6 B. & C. 718, 13 E. C. L. R. 303; *Ross* v. *Milne*, 12 Leigh 204 ; *Jones* v. *Thomas*, 21 Grat. 96.) -

In *Barford* v. *Stucky*, the action of debt was brought by John Barford, administrator of Martha Elizabeth Pitts, against Vincent Stucky on an annuity-deed between Barnaby, John Bartlett and the defendant of the one part and Nathaniel Pitts of the other part. By this deed, which was set out on *oyer*, after a recital containing statements, which were immaterial to the decision, Barnaby, John Bartlett and the defendant did severally and respectively agree with Nathaniel Pitts, his executors and administrators, that they, Barnaby, John Bartlett and the defendant, would during a term of twenty-one years, to commence March 25, 1810, in case they or the survivor of them should so long live, pay or cause to be paid to Nathaniel Pitts, or in case of his death within the term to the use of his child or children, if any, in such proportions as Nathaniel Pitts should by deed or will appoint, or in default of appointment to all of them equally, and, if there should be no child, to his then wife, if she should remain his widow, an annuity of £500 by half yearly payments. Averments that Nathaniel Pitts died within the term intestate and without making any appointment; that Martha Elizabeth Pitts, his only child, afterwards died within the term intestate and without making any appointment; and that the wife of Nathaniel Pitts also died within the term in the lifetime of Nathaniel Pitts; that the plaintiff took out administration of the effects of Martha Elizabeth Pitts, and that three half-yearly payments of the annuity were in arrear. There was a general demurrer to the declaration. Dallas, C. J., said :

" It seems to me this action can not be maintained by the administrator of Martha Elizabeth Pitts, because she was no party to the contract, which makes it necessary to see between whom the contract really was. It was a contract between Barnaby, John Bartlett and the defendant of one part, and Nathaniel Pitts of the other part; and the daughter was

in no respect privy or party thereto, though in a certain
event she would take a beneficial interest.    To the contract
therefore we must look, in order to ascertain the rights of
the parties and it is a general principle, that the right to sue
under a contract is confined to the parties to the deed. Now
Martha Elizabeth Pitts was no party to this deed.    The con-
sideration did not move from her but her father, and the ob-
ligation arises out of the contract itself.    It is admitted that
an action might have been brought by the administrator of
Nathaniel Pitts ; if he had recovered, he would have been
a trustee for Martha Elizabeth Pitts ; and if he had refused
to sue he might have been compelled by a court of equity to .
lend his name."

The judges all concurred.

In *Berkley* v. *Hardy, supra,* the action was covenant upon
an indenture between "A. for and on behalf of B. on the one
part, and C. on the other part."    A. being thereto authorized
by writing under B.'s hand, but not under seal, and A. exe-
cuted the deed in his own name."    Held that B. could not
maintain covenant on the deed, although the covenants were
expressed to be made by C. to and with B."

In *Southampton & Drummond,* v. *Brown, supra,* "where by
an indenture between A. and B. of the first part, C. of the
second part, and D. of the third part, A. and B. did, with the
assent of C. devise to D. for years, yielding and paying a
certain rent to E. and the heirs of his body, and D. covenanted
with A. and B. and E. to pay the rent and to repair, &c. Held,
that E. could not join with A. and B. in an action of covenant
against D. for non-payment of rent, and not repairing."

In the case of *Ross* v. *Milne and wife,* 12 Leigh 204, the
action was debt by Milne and wife against Ross for £500
sterling.    The indenture sued on is thus described in the
declaration:    "For that whereas in the lifetime of a certain
Janet Smith, the mother of the said Jane Milne, to-wit on
September 7, 1816 at London in Great Britain, to-wit, at,
&c., by a certain indenture then and there made between the
said Janet Smith of the one part, and the said James Ross
of the other part, and sealed with the seals of the said Janet
and James (which said indenture bearing date the same day
and year aforesaid, is in the possession of the said James

by reason of which the plaintiffs are unable to make *profert* thereof) the said James for the consideration therein mentioned did among other things, agree and oblige himself to pay to the said Jane Milne, her executors, &c., the said sum £500 sterling, within two calander months next after the decease of the said Janet; and the said A. Milne and Jane Milne his wife, aver, that on March 18, in the year 1832, at &c. the said Janet, departed this life, whereof afterwards towit on the same day and year last aforesaid at &c., the said James had notice; and since the decease of the said Janet as aforesaid more than two calander months have long ago elapsed whereby action hath accrued," &c. The court of appeals held the action could not be maintained. Tucker, president for the court, said :

" To this indenture between Janet Smith and the defendant Mrs. Milne is *no party* and therefore on well established principles, she can not sue upon it at law. Whether such a trust or interest is created for her benefit, as will enable her to sue in equity, it is not necessary in this case to enquire. It is sufficient she can not sue at law. The right to sue under an indenture *inter partes* is confined to the parties to it." After a review of the authorities, the judge says : " Upon the whole therefore I am of opinion that Mrs. Milne had no rights under this supposed contract. But if she had I am still of opinion that they could only be enforced in a court of equity. For it is not perceived that Mrs. Smith's representative has any concern or interest in the matter; he represents her with whom the contract was made by Ross, and from whom the consideration moved. Accordingly in one case where the right of the beneficiary to sue was sustained, the right of the promissee to sue was also admitted. *Bell* v. *Chaplain*, Hard. 321. But this leads to one of two consequences, either that the recovery here would not be a bar to the suit of the representative of Mrs. Smith, or it would be a bar. If it would not be a bar, then the defendant would be twice charged; if it would be a bar, then the representative of the promissee would be concluded by a proceeding to which he is no party. If then Mrs. Milne has rights, it is safest that they be asserted in equity, where all the parties can be convened; or that at least the suit should be brought in the

name of Mrs. Smith's administrator, that by being a party upon the record any controversy between him and Mrs. Milne as to her rights may be collaterally decided by the usual proceedings in similar cases."

Tucker, president, in this case reviews many authorities, among which are the following, of which we will give the substance. In *Fulton* v. *Dickinson*, 10 Mass. 287, a father bound his son to a trade, and the master agreed in consideration of his services to pay him a certain sum at full age. The son served out his time, and at maturity brought and maintained the action. His services were the consideration; and as it moved *from him*, and the promise to the father was *for him* he being a minor, it was in effect a promise to himself. After his review of a number of authorities, he says:

"All the other authorities, which have been reviewed or referred to at the bar, in which the action by a third party has been sustained, will be found, I think, to be cases in which a valuable consideration moved *from* him, or the money was directed to be paid over in discharge of a debt due him. Such was the case of *Ward* v. *Evans*, 2d Ld. Raym. 928; *Israel* v. *Douglass*, 1 H. Black, 239; *Weston* v. *Barker*, 12 Johns. 276, in which last, however, Spencer dissented in a strong opinion. The whole of this case depends upon these legal principles: that *choses in action* are not assignable; and that no executory contract has any force unless sustained by a valuable consideration. The first is a rule of law adopted for the prevention of maintenance; and though it has in modern times been somewhat relaxed, it is still a ruling principle. It was early admitted that an assignment for value was good in equity; and the assignee is now also permitted to sue at law in the name of the assignor, but he cannot sue in his own name. Nor can the assignee sue at law or in equity, unless he is an assignee for value, as has been already shown. The second principle is universal. No executory contract has any force, unless it be for value; and moreover wherever a valuable consideration is essential to an agreement, the legal interest in the simple contract resides with the party from whom the consideration moves notwithstanding it may enure for another's benefit, or even is to be performed to another person."

In *Hall* v. *Mason*, 17 Mass. 574 it was held, that where A. was the debtor of B. in the sum of $1,300.00 and also of C. in the sum of $400.00 and being abroad remitted to B. a bill of exchange for $1,000.00 with directions when the amount should be received to pay C. $200.00, and B. received the payment of the bill at maturity but neglected to pay C. as directed and gave him no return of the remittance, B. was liable to C. for the $200.00, in an action for money had and received to his use. And in *Arnold* v. *Lyman*, 17 Mass. 400 the action was *assumpsit*, founded upon an agreement subscribed by the defendant as follows:

"Whereas, Hezekiah Hutchens hath this day assigned, transferred, made over and sold to me certain notes, accounts, demands, goods, wares and merchandise, as per invoice and schedule arranged with full authority to collect, receive and make sale of them to my own use; now therefore in consideration of the premises, I do hereby promise and engage, to assume and pay the following demands against the said *Hutchens* as follows, to-wit: and also one note to Samuel Arnold, for $237.00—and to save the said Hezekiah harmless from all costs and expenses on account thereof. In witness whereof," &c.

Parker, C. J. said: "But we think the promise may be legally considered as made to the several creditors, whose debts the defendant undertook to pay, if they chose to avail themselves of his engagement. The promise was to pay certain particular debts; and there seems to be no reason why it should not be treated as a promise to the creditors. It being in writing and there being a sufficient consideration, it is no objection that it is a promise to pay the debt of another. The promise being not to Hutchens expressly, but general in its form, the assent of the creditors made them parties to the promise; and this assent is sufficiently proved, as respects the plaintiffs, by their bringing an action upon the contract. Generally he, for whose interest a promise is made, may maintain an action upon it, although the promise be made to another and not to him."

After the decision in *Ross* v. *Milne*, 12 Leigh, which was decided in 1841, and no doubt because of that decision the revisors of the Code in 1849 reported the following, which

was adopted as a part of the Code, sec. 2, ch. 116, and was again made part of the Code of 1860, sec. 2, ch. 116, and is now sec. 2, of ch. 71 of the Code of 1868:

"An immediate estate or interest in, or the benefit of a condition, respecting any estate, may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the sole benefit of a person, with whom it is not made, or with whom it is made jointly with others; such person may maintain, in his own name, any action thereon, which he might maintain, in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

I find no case in Virginia giving a construction to this statute. Without deciding its precise meaning this Court in *Nutter* v. *Sydenstricker*, 11 W. Va. 535, held it covered that case, although we were inclined to the opinion that the suit could have been maintained in that case at common law. The only case in Virginia which I have found, that refers to this statute is *Jones* v. *Thomas*, 21 Grat. 96. That was an action of covenant by Jones against Thomas on the following covenant or deed-poll:

"MARCH 12, 1863.

"I hereby bind myself, my heirs, &c., to pay ——— the amount of principal and interest due from W. A. Jones on the tract of land purchased by him of G. W. Jones and wife.

"Witness my hand and seal the day and date above.

"ABIJAH THOMAS, [SEAL.]"

The defendant craved *oyer* of the writing and demurred to the declaration, and the court sustained the demurrer and rendered judgment for the defendant, to which judgment plaintiff obtained a writ of error from the district court of appeals at Abingdon; where it was affirmed, and from which judgment he obtained a writ of error. Staples, judge, said:

"It is insisted that as the plaintiff in error is not a party to the instrument, nor the debt payable to him, he can maintain no action thereon in his own name. It is undoubtedly true that at common law an indenture or deed *inter partes* is only available between the parties to it and their privies; and third persons can maintain no action in covenant thereon

though made for their benefit. This rule however does not apply to deeds-poll, as to which it has been long settled that persons beneficially interested therein may sue, though not described as contracting parties. The distinction is founded in the form and qualities of the respective instruments. A deed *inter partes* is an agreement under seal between two or more persons executing the same, and entering into reciprocal obligations with each other. It is a solemn declaration that all the covenants comprised in the instrument are intended to be made between these parties and none others. A deed-poll on the other hand is the act of a single party, and is in the nature of a declaration made by him of his intentions or obligations to some other person   *   *   In *Sunderland Marine Ins. Co* v. *Kearney*, 71 Eng. C. L. R. 925, 937, the objection was made that the plaintiff was improperly joined as a party, his name not being mentioned in the policy on which the action was brought, and in support of this objection much reliance was placed on the case of *Green* v. *House.* Lord Campbell delivering the opinion of the queen's bench, said it could not be meant by that rule that the party's name of baptism and his surname must be necessarily set out. If he be sufficiently designated in the deed, this must be enough to entitle him to sue for breach of covenant. A description, which can not be mistaken, is for this purpose as good as the actual name of the individual. And in *Fellows* v. *Gilman*, 4 Wend. 414, the supreme court of New York thus expressed the rule: 'It must undoubtedly appear that the covenant alleged to have been broken was made for the benefit of the person bringing the action. He must in some manner be pointed out or designated in the instrument, but it is not necessary his name should in terms be used. The defendant's covenant is to pay each and every person such sum as the constable shall become liable for. This in connection with the allegations in the declarations shows as satisfactorily as in the case of an heir or executor, that the plaintiff was one of the persons for whose benefit the covenant was executed.' See also 2 Lomax Dig. 9; 4 Comyn. Dig. 282; *Choles* v. *Conley's Heirs*, 2 Dana 21; *Webb* v. *Penn*, 17 How. U. S. 576. These cases show the inclination of the courts to give effect to the contracts of parties, and never to declare them void, if

by any reasonable and fair construction they can be made good. They establish the proposition, that persons not described as parties in deeds-poll, or even mentioned as having beneficial interest therein, may sue thereon in their own name, if it manifestly appear the covenants were made for their benefit. * * * If the covenant in this case had been made in fact with George W. Jones, as it might have been, there would be no question of his right to sue thereon in his own name. And I am inclined to think that, as it is for his benefit, although not made with him, he might maintain the action under the provisions of sec. 2, ch. 116, Code of 1860. These provisions however do not affect the interests of Wm. A. Jones, the plaintiff in error. The effect of this statute is not to divest rights but to afford remedies to parties not allowed by technical rules of pleading at common law. It is said however that on the face of the instrument here, it is uncertain whether the covenant was made with George W. Jones, and for his benefit, or with the plaintiff in error. It appears by an inspection of the paper as it was originally drawn, the blank was filled with the name of the plaintiff in error as payee, and the contract in that condition was a covenant to pay him the debt due George W. Jones. Subsequently the name of the plaintiff in error was erased by running a line across it, but yet leaving the name sufficiently distinct. It probably occurred to the parties after the instrument was drawn, that as the arrangement was for the defendant, Thomas, to pay an existing debt due to George W. Jones, it was inconsistent with that arrangement to stipulate for its payment to the plaintiff in error; and so the name was erased leaving it an obligation to pay George W. Jones. Whether this be or not the correct solution, the name of the plaintiff in error, in the connection in which it was mentioned, clearly indicates him as the real party to the transaction, and as the person for whose benefit it was made. This presumption is rendered conclusive by the delivery to the plaintiff in error, and his acceptance of the obligation."

The judgments were reversed and the cause remanded.

I do not say whether this case was decided correctly or not; whether W. A. Jones, or George W. Jones was entitled to sue on the covenant. But I am convinced that both would

not under the statute be entitled to maintain an action. If one could sue on it, the other could not. It was not intended for the benefit of both, in the sense that either could sue. It would not then, if equally for the benefit of *both*, be for the *sole* benefit of *either*, and the statute gives the right to the party to sue, *where the covenant or promise* is for the *sole* benefit of a party, with whom it is not made, or with whom it is made jointly with others. If a covenant were made partly for the benefit of several, whose names were not signed to the covenant or contract, and neither had a distinctive right to the benefit of that particular promise or covenant, I do not understand that a court of law would allow either of such persons to maintain a suit thereon under the provisions of the statute. But where even in a deed or indenture *inter partes* a certain covenant is made, as in many of the cases we have cited, for the sole benefit of a third person, not a party to the deed distinctly designated therein, such person now under the statute may maintain an action. In such case it will be regarded for the *sole* benefit of such person, where the primary object of the parties to the deed in that covenant relating to such third person was, to secure to him the payment of money, or to make other provisions for his benefit. But, if such covenant was merely incidental to an agreement between themselves, then it could not be regarded for the sole benefit of such third person. In case where the covenant referring in any manner to a third person or stranger, was only incidental to the covenants between the parties thereto, and not intended by them to make any provision for such third person or stranger, it would be unjust to the parties and inconvenient in practice, to permit such strangers to thrust themselves into the private affairs of others, and demand the production of their private contracts and sue thereon.

The statute provides for two classes, *first*, where the covenant or promise is made by one or more for the *sole* benefit of a stranger; that is, one who did not sign the covenant; *second*, where a covenant or promise between several persons is made for the *sole* benefit of one of them, who signed it, then in either case he, for whose sole benefit the covenant or promise was made, whether he was a party to the covenant or not, may maintain an action thereon in his own name. By

this construction the statute supplying what is necessarily understood would read as follows : " If a covenant or promise be made for the sole benefit of a person with whom it is not made, or (if a covenant or promise is made for the sole benefit of a person) with whom it is made jointly with others, such person may maintain in his own name any action thereon, which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

Now it seems to me that the parties to the covenant sued on here, did not, nor did they intend to, make the second promise of the covenant, the one in suit, for the sole benefit of David Johnson.    The object in said provision was not to secure David Johnson the payment of the $350.00, one half the indebtedness of the old firm to·him.    They did not seem to contemplate making any provision for Johnson at all.    The old firm was then solvent.    They were taking new members into the firm, or rather forming a new firm.    The old firm had sold to the new members " one half interest in all the machinery, equipments and press at Belfont Woolen Factory for the sum of $7,000.00.    This was not all they were to pay to make them equal partners.    By the fourth provision, " the stock of wool cloth and warp then in the factory was to be taken by the new firm at cost prices."

By the fifth provision each of the four partners in the new firm was to devote his individual services to such employment connected with their business, as might be assigned to him. By the second provision the new members, D. G. McClung and J. B. Anderson, were further to pay as a part of the consideration one half the indebtedness for the power, spinner, looms and other machinery purchased by D. C. Anderson & Co., for the sum of $700.00 in specie of David Johnson. There was no agreement, that these new members would *pay to David Johnson* the one half of said indebtedness.    The language is : "D. G. McClung and J. B. Anderson hereby assume one half the indebtedness for power, spinner, looms and other machinery purchased by D. C. Anderson & Co. for the sum of $700.00 in specie of Mr. David Johnson." As, between the partners the new members in settlement among themselves would not have to pay any part of the indebtedness

of the old firm, unless they bound themselves by contract to pay the same. Used in the connection it is, the word "assumed" does not mean, that the new members would pay that amount *to David Johnson*, but would pay it to D. C. Anderson & Co., the members of the old firm. Suppose there had been $10,000.00 indebtedness on the books, and McClung and J. B. Anderson had in the contract said they "assumed" to pay one half that indebtedness without mentioning the name of a creditor, will it be said that any of these creditors under the provisions of the statute could sue? Yet the word is used in the same sense here as in the case supposed. It matters not therefore to the plaintiff in error, that the pleas were admitted, or that the court set aside the verdict in his favor; as it could not have been to his prejudice, he having no right to maintain this action.

The judgment of the circuit court is affirmed.

Judge Woods concurs.

Judge Green concurs in syllabus but dissents from the opinion.

Affirmed.