UNITED DISPATCH, INC.

*v.*

E. J. ALBRECHT CO.

(No. 10273)

Submitted October 3, 1950. Decided November 21, 1950.

*Steptoe & Johnson,* and *James M. Guiher, David A. Watts,* for plaintiff in error.

*Ambler, McCluer & Davis,* for defendant in error.

*A. Devitt Vanech,* Assistant Attorney General, *Charles Lee Spillers,* United States Attorney, *Roger P. Marquis,* Attorney, Department of Justice, *Frederick W. Smith,* Attorney, Department of Justice, *amicus curiae,* for United States.

LOVINS, PRESIDENT:

The purpose of this action of assumpsit, brought in the Circuit Court of Wood County, West Virginia, is to recover damages to a building and for loss of the use of

such building, allegedly caused by an excavation made adjacent to such building.

United Dispatch, Inc., a corporation, the owner of the building, brought this action against E. J. Albrecht Company, a corporation, which admittedly excavated the land adjacent to plaintiff's building. Plaintiff and defendant hereinafter will be so designated.

The building is located near the confluence of the Ohio and Little Kanawha Rivers, in the City of Parkersburg, and consists of three sections, constructed at different times. One section, designated as "Swan Hotel", was built some time prior to 1861; another section, designated as "United Merchandise" building, was built about the year 1915; and the third section, designated as "Parkersburg Transfer & Storage" building, was completed some time in 1910 or 1911. We are here concerned with the section or unit of plaintiff's building designated as "Parkersburg Transfer & Storage" building. It seems, however, that all three sections of the building were used by plaintiff in conducting a transfer and storage business, and in storing motor vehicles.

The building is located on low land, and has been frequently subjected to floods. A stage of water in excess of thirty-four feet floods the building. The "Parkersburg Transfer & Storage" building will hereinafter be designated as "Section 3". It is constructed of brick, timber and metal sheeting, and is four stories high. The first two stories are constructed of brick, and the other two stories of sheet metal fastened to wooden frames. The walls of the first story of Section 3 are nineteen inches in thickness, and those of the second story are approximately thirteen and one-half inches. The walls are cracked. There are indications that such cracks had been repaired and that the building had subsided prior to the time defendant made the excavation here considered. Defendant offered to prove that Section 3, bounded on the northeast side by Kanawha Street (First Street) and by Ohio Street, encroaches upon the right of way of Kanawha

Street approximately eleven feet, and upon the right of way of Ohio Street five feet, four inches, but that proof was rejected.

The United States of America, on November 4, 1947, entered into a contract with the defendant for the construction of a concrete wall and levee at Parkersburg, designated as Section 2. The estimated amount to be paid on the contract was $4,262,161.00. The wall and levee were located generally along the left descending bank of the Ohio River, along the right descending bank of the Little Kanawha River, and were constructed for the purpose of affording local flood protection to the City of Parkersburg. The contract and the specifications, incorporated therein and made a part of the contract, are voluminous. For the purposes of this opinion, we deem a recitation of the following parts of the contract and specifications sufficient:

> "Article 10. * * * He [the contractor] shall be responsible for all damages to persons that occur as a result of his fault or negligence in connection with the prosecution of the work. * * * the contractor shall be responsible for all loss or destruction of or damage to property that occurs as a result of his fault or negligence in connection with the prosecution of the work, and shall be responsible for all materials delivered and work performed until completion and final acceptance. * * *

> "* * *

> "* * * The contractor shall protect all existing structures, utilities and work of any kind against damage or interruption of service which may result from operations of the contractor. Damage or interruption of service resulting from failure so to do shall be repaired or restored promptly by or at the expense of the contractor.

> "All excavations which are more than five feet in depth shall be suitably shored unless side slopes are 1 on 1 or flatter. Any foundation or structure whose stability is endangered by adjacent excavation shall also be suitably shored. * * * All shoring used shall have the prior approval of the contracting officer [the District

Engineer at Huntington, West Virginia,]; however, the contractor will be held solely responsible for the adequacy of any shoring employed.

"It is contemplated that driving of steel piling shoring and unwatering of the excavation by means of a well point system or other equivalent means will be necessary in order to perform the work of excavating the unsuitable material and replacement in the dry of suitable foundation material in the above area."

With reference to the driving of piling or dewatering of the excavation, the defendant sought the advice of a specialist in dewatering excavations, and, as a result, a detailed plan was submitted to the office of the District Engineer at Huntington, which had for its purpose the elimination of driving any piling and substituting therefor a well point system. The change was approved, as evidenced by a letter, dated March 1, 1948, addressed to the defendant, and signed by the technical assistant to the contracting officer, which reads in part as follows:

"Receipt is acknowledged of your letter dated 17 February 1948, inclosing three prints of Moretrench Corporation's drawing No. L-333 in connection with unwatering the excavation for the wall base, Parkersburg Local Protection Project, Section 2.

"The drawing has been reviewed and appears to be generally satisfactory subject to the following comments:

"a. In order to prevent subsequent boils during flood periods, all holes shall be filled with a concrete or other suitable impervious material from the top of the sand and gravel (approximate elevation 565.0) to the top of the hole as directed by the contracting officer in the field.

"* * *

"c. In generally approving the method of excavating and unwatering the excavation, it is to be distinctly understood that you are to assume full responsibility for the adequacy of the method you propose to use in regard to the successful un-

watering of the excavation and for the stability of structure adjacent to the excavation."

A well point system calls for the installation of numerous pipes driven into the underlying earth which, in effect, are wells. When installed, such wells are connected to a larger pipe and a heavy suction pump is connected with the larger pipe, so that the water may be pumped from the strata of the earth and the water table thereby lowered, the theory being that earth strata so treated would be in a comparatively dry condition.

Core drillings or borings along the right of way where the flood wall was to be constructed at points adjacent to plaintiff's building disclosed that there was vegetable matter in some of the strata, which rendered the ground unsuitable for the foundation. This condition required extensive excavation and back-filling with suitable materials, so that the foundation of the flood wall would be secure. No piling was driven, and no shoring was installed, defendant depending on the well point system to dewater the excavation. The excavations were made on a 1 on 1 slope or at an angle of forty-five degrees with the horizontal, and commenced at or near the northwest wall of Section 3 of the plaintiff's building.

The defendant advised plaintiff by registered mail of its intention to make the excavation. The work was commenced in June, 1948, and was prosecuted with vigor and haste. Notwithstanding the dewatering of the earth strata and the haste with which the excavation was made, numerous slips occurred, from which the wall of Section 3 of plaintiff's building subsided from one to two feet at different places, causing the doors, windows and floors of said building to sag and break. By reason of such condition of the building, plaintiff was required to move a large amount of stored materials, then located in the building. Numerous cracks in the walls of the building are shown, and it is established that plaintiff has lost the use of a portion, if not all, of Section 3.

The record discloses that the grades of the two streets adjacent to plaintiff's building have been raised; but plaintiff disclaims seeking any damages in this action on account of such changed grades.

This action was instituted on the contract above-mentioned upon the theory that it was made for the sole benefit of plaintiff, or that plaintiff is a member of a class for whose sole benefit the contract was made, as authorized by Code, 55-8-12.

The Circuit Court of Wood County tried this action upon the theory that plaintiff was a third party beneficiary to the contract between the United States of America and the defendant; and that the measure of recovery herein was the cost of restoring the building, plus the loss of the use thereof. Testimony was offered by defendant to show that plaintiff paid $12,000.00 for the three sections of the building about two and a half years prior to the date of the trial. That evidence was excluded. Testimony showing the difference in the market value of the building immediately before it subsided, and immediately after the damage was done was offered, and likewise excluded.

Evidence adduced by the plaintiff tended to show that it would cost approximately seventy thousand dollars to repair the building. Testimony along the same line introduced by defendant tended to show that it would cost approximately eighteen thousand, six hundred dollars, to repair the building, using concrete blocks instead of brick, and that it would cost approximately thirty-one thousand dollars to repair with brick.

Plaintiff tendered two instructions, both of which were given, over objection of defendant. Instruction No. 1, in substance, instructed the jury that it was the duty of the defendant to protect existing structures, utilities and work of any kind against damage or interruption of service, and that if defendant in making the excavation called for by its contract with the United States of America dam-

aged plaintiff's building, it was defendant's duty to repair and restore the building to its former state at its expense.

By instruction No. 2, the jury was instructed that if they believed from the evidence that the contract between the United States of America and defendant provided for the protection of existing structures, utilities or work of any kind against damage or interruption of service, resulting from the operations of the contractor, it was the duty of the defendant to restore said service and put plaintiff's building in a condition where plaintiff could promptly resume the use of it "for the purpose for which it was being used at the time of the injury complained of * * *." The jury was further instructed that if they believed that defendant had failed to restore said building, plaintiff was entitled to recover from defendant damages in a sufficient amount to recompense plaintiff for the loss it had sustained by the interruption of the service, and, in addition, plaintiff might recover any amount to which he may be entitled for repairs to the building.

Defendant offered instructions Nos. A, B, C-3, D, E, instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 10-A, 11, 13-A, 13-B, 13-C, 13-D, 13-G, and 15, all of which were refused; and instructions Nos. 12, 14, 17, and 18, which were given. We shall not discuss in detail the instructions tendered by defendant and refused, since we conclude that this action was tried on an erroneous theory, as will be hereinafter shown.

The trial resulted in a verdict for plaintiff in the amount of fifty-five thousand dollars. Motions to enter judgment, notwithstanding the verdict, and to set aside the verdict were made and overruled. The trial court, after overruling the two motions, entered judgment on the verdict. Defendant brings the case here by writ of error.

Many errors are assigned. We think, however, they may may be summarized as follows: (1) That this action could not be brought and tried upon the contract between the United States of America and the defendant under

Code, 55-8-12; (2) that defendant is not an insurer or guarantor against loss or damage of plaintiff's building; (3) that the proper measure of damages is not that allegedly required by the contract, i. e., the repair and restoration of plaintiff's building, regardless of its value; and (4) that the encroachment of plaintiff's building upon the right of way of Ohio and Kanawha (First Street) Streets is a valid defense barring plaintiff's recovery.

The factual statement shows that the controlling, if not the sole question, is whether plaintiff may maintain this action on the contract between the Government of the United States of America and the defendant. The two questions relating to the contractual guarantee and the measure of damages above stated arise out of the holding of the trial court that plaintiff could maintain this action on such contract, though not a party thereto.

As above stated, plaintiff relies upon the provisions of Code, 55-8-12, reading as follows: "If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

The enactment of this statute grew out of the decision of the Supreme Court of Appeals of Virginia in the case of *Ross* v. *Milne* (decided April, 1841), 12 Leigh 202, wherein it was held that a person not a party to a deed *inter partes* could not maintain an action for breach of covenant, and that a person from whom no consideration moved could not maintain an action upon parol contract between two other persons, and to which plaintiff was not a party.

The statute above quoted appears as Section 2, Chapter 116, Code of 1860. The following language, however, was part of the original statute: "An immediate estate or in-

terest in, or the benefit of a condition respecting, any estate, may be taken by a person under an instrument, although he be not a party thereto." The language just quoted appears in the Code of 1931, as Code, 36-1-7, with slight and immaterial changes. We are here concerned only with the part of the statute relating to parties to a contract, which seems to have been treated by this Court with variant results.

In the case of *Nutter* v. *Sydenstricker,* 11 W. Va. 535, it is pointed out that there is a conflict in the decided cases with respect to the holding of the Court in the case of *Ross* v. *Milne, supra;* but that such conflict has been resolved in this jurisdiction by the enactment of the statute above quoted. In the *Nutter* case it was held that Nutter could recover in an action of assumpsit from the obligors in a writing to which he was not a party, he having paid a debt for which he was not primarily liable.

In the case of *Johnson* v. *McClung,* 26 W. Va. 659, the right to maintain an action on a contract was denied, mainly on the ground that it was not made for the sole benefit of the plaintiff. This Court held in *Jenkins* v. *Railway Co.,* 61 W. Va. 597, 57 S. E. 48, that the statute applied to a case wherein the plaintiff was one of a class of persons designated in a contract for whose benefit the contract was made; and that a member of such class could maintain an action at law, although not a party to the contract. In *Neil* v. *Flynn Lumber Co.,* 71 W. Va. 708, 77 S. E. 324, an injured employee was permitted to maintain an action at law for the failure of the employer to perform an agreement to furnish a competent and skillful physician to treat the employee for sickness or accident occurring while in its service. See *Hamilton* v. *Coal Co.,* 103 W. Va. 402, 137 S. E. 535. The principle that the agreement must be made for the sole benefit of an unnamed party in order that such unnamed party may maintain an action on an agreement is accentuated in *King* v. *Scott,* 76 W. Va. 58, 94 S. E. 954.

In *Pollock* v. *Traction Co.,* 83 W. Va. 768, 99 S. E. 267,

this Court held that plaintiff could maintain an action for damages under the provisions of a franchise granted by a county court to a traction company, it being reasoned that plaintiff in that case was damaged by failure of the traction company to obey the provisions of a law, and a recovery for plaintiff was affirmed upon that theory. *Cf. Weaver* v. *Wheeling Traction Co.,* 91 W. Va. 528, 114 S. E. 131. This Court again passed on the application of Code, 55-8-12, in the case of *Hamilton* v. *Public Service Co.,* 88 W. Va. 573, 107 S. E. 401, again stressing the principle that in order that a person not a party to a contract may maintain an action at law thereon, it must be for the sole benefit of such person. In *Petty* v. *Warren,* 90 W. Va. 397, 110 S. E. 826, the right to maintain an action was denied to plaintiff on the ground that he was a joint, and not a sole, beneficiary on the contract. One who is not a party to a bond may not maintain an action, unless the bond was made for his sole benefit. *State* v. *Indemnity Co.,* 99 W. Va. 277, 128 S. E. 439. An action may not be maintained by a party on an insurance policy against a liability insurance company, where the policy is made for the protection of the insured, a transportation company, from claims for damages, and damages to its own property in the operation of its transportation facilities. *O'Neal* v. *Transportation Co.,* 99 W. Va. 456, 464, 129 S. E. 478. In *Johnson* v. *Casualty Co.,* 112 W. Va. 396, 164 S. E. 411, this Court held that a plaintiff protected by a group insurance policy issued by the defendant insurance company at the instance of plaintiff's employer could maintain an action at law on the policy. The opinion in *Johnson* v. *Casualty Co., supra,* did not mention Code, 55-8-12, but adverted to the general rule mentioned in *Nutter* v. *Sydenstricker, supra,* stating the same as follows: " 'He for whose interest a promise is made, may maintain an action upon it; though the promise be made to another and not to him.' " As to actions on policies of group insurance where a similar course was followed, see *Watts* v. *Equitable Life Assurance Society,* 125 W. Va. 209, 23 S. E. 2d 923; *Somog* v. *Agency,* 110 W. Va. 205, 157 S. E. 400. For a cognate

question presented in an action on insurance policies issued to the owners of motor vehicles, see *Criss* v. *Fidelity & Guar. Co.,* 105 W. Va. 380, 142 S. E. 849. A discussion of the contractual rights of persons not parties to a contract will be found in 1 Restatement of the Law of Contracts, Section 133, *et seq.* The rights of beneficiaries under promises to the United States of America are stated in 1 Restatement of the Law of Contracts, Section 145, and W. Va. Annotations, page 89. An instructive note discussing the various aspects of decisions in this jurisdiction under Code, 55-8-12, will be found in 49 W. Va. Law Quarterly, at page 132, *et seq.*

It is not amiss to note that Code, 55-8-12, by its plain and unambiguous language, is made applicable to an *action.* A suit in equity is not mentioned in that statute. It therefore seems inadvertent and inaccurate to apply the principles embodied in Code, 55-8-12, to suits in equity as was done in *Oil Co.* v. *Smith,* 116 W. Va. 16, 178 S. E. 281; *Chitwood* v. *Collins,* 122 W. Va. 267, 271, 8 S. E. 2d 830; *Coal Co.* v. *Coal Co.,* 123 W. Va. 53, 62, 14 S. E. 2d 922.

The statute substantially in the original form appears in the 1942 Code of Virginia, Serial Section 5143, with the important change that an action may be maintained by a person not a party to the contract, if made for his benefit "in whole or in part", the change having been made in the Code Revision of 1919.

The Supreme Court of Appeals of Virginia has considered this statutory provision in several cases since its original enactment. See *Jones* v. *Thompson,* 21 Gratt. 96; *Stuart* v. *James River & Kan. Co.,* 24 Gratt. 294; *Willard* v. *Worsham,* 76 Va. 392, 397; *Tilley* v. *Connecticut Fire Insurance Co.* (Va.), 11 S. E. 120; *Newberry Land Co.* v. *Newberry* (Va.), 27 S. E. 899.

After the revision of 1919, the Supreme Court of Appeals of Virginia applied that statute in the case of *Montague Mfg. Co.* v. *Homes Corp.* (Va.), 128 S. E. 447, holding that if a contract be made for the sole and exclusive

benefit of the parties named in the contract, a person not named could not maintain an action on such contract. In the case of *Horney* v. *Mason* (Va.), 35 S. E. 2d 78, the Virginia Court applied the revised statute, to the effect that a person not named in the contract but who had a beneficial interest in such contract, in whole or in part, could maintain an action thereon.

The Supreme Court of the United States in the case of *Ger. Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 350, 57 L. ed. 195, 33 S. Ct. 32, in discussing the principle here considered, used the following language: "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit." See *United States* v. *C. A. Riffle Co.*, 247 F. 274.

A Provision in a contract between a contractor and the United States of America, similar to the one here considered, was held to be intended as an allocation of the responsibility as between the United States of America and a contractor. *United States* v. *Massachusetts Bonding & Ins. Co.* (C. C. A. 6), 18 F. 2d 203.

For an application of the West Virginia statute to the right of an action under the sole beneficiary statute in a malpractice action, see *Aetna Life Ins. Co. of Hartford* v. *Maxwell* (C. C. A. 4), 89 F. 988. See *Howsman* v. *Trenton Water Co.* (Mo.), 24 S. W. 784; *Whitmore* v. *Fago,* 93 N. Y. S. 2d 672; Annotation 81 A. L. R. 1271, 1286; 12 Am. Jur., Contracts, Sections 274, *et seq.*

We think a consideration of the authorities in this, as well as other, jurisdictions leads to the conclusion that a person not a party to a contract may maintain an action thereon when such contract is made and intended for his sole benefit; and, likewise, an action may be maintained if the contract is made and intended for the benefit of a class of persons definitely and clearly shown to come within the terms of the contract. The intent of the con-

tracting parties must appear from the contract or be shown by necessary implication; and be in accordance with the parol evidence rule when the contract under consideration is in writing.

We must consider the entire contract as well as the particular portions thereof relied upon by the plaintiff. Upon such consideration of the entire contract in all of its multitudinous details, we can reach no conclusion except that it was made for the sole benefit of the contracting parties. The provisions relied upon by plaintiff as giving it a right of action on the contract were intended for the benefit and protection of the Government of the United States of America, and not for the sole benefit of the plaintiff or for the sole benefit of a class of which plaintiff is a member. It follows that the Circuit Court of Wood County was in error in permitting this action to be maintained on the contract between the United States of America and the defendant. It was likewise error to apply the provisions of that contract in measuring the extent of defendant's liability and the amount of damages done to plaintiff's building.

The foregoing disposes of the questions whether defendant is a guarantor with respect to the condition of plaintiff's building, and the claimed measure of damages. The defendant's liability, if any, is measured by the rules laid down by this Court in *Walker* v. *Strosnider*, 67 W. Va. 39, 67 S. E. 1087, wherein the principle is stated that an owner of land is entitled to adjacent support for his land in its natural state; and, further, that any person depriving a landowner of adjacent support of his land burdened by a building by negligent act or conduct is liable for his negligence.

The trial court applied a measure of damages allegedly provided for in the contract between the United States of America and the defendant. We do not think that is the correct measure of damages. Nor is defendant a guarantor or insurer against damages to plaintiff's building. We express no opinion as to the correct measure of

damages, since such damages may be ascertained by well known and easily applied principles stated by this Court in many cases.

In view of our holding herein that the action in its present form cannot be maintained, we express no opinion upon the question raised by defendant with reference to the encroachment of the building on the public streets of the City of Parkersburg. We direct attention, however, to the fact that the cases cited with reference to obstruction of public ways and the removal of such obstructions generally are opinions dealing with proceedings in eminent domain, and not with actions at law for the recovery of damages grounded on privation of adjacent support.

The foregoing disposes of the errors assigned, and in consideration thereof we reverse the judgment of the Circuit Court of Wood County, set aside the verdict, remand this action to the Circuit Court of Wood County and direct that the same be dismissed without prejudice to the right of plaintiff to maintain a proper action, if so advised.

*Judgment reversed;*
*verdict set aside;*
*remanded with directions.*