Roy A. Ison, *et al.*
*v.*
Daniel Crisp Corp., a Corp.
(Formerly Daniel Coal Co., *Inc.*)

(CC 860)

Submitted September 12, 1961. Decided November 21, 1961.

*Wm. B. Hogg, Robert J. Staker,* for plaintiffs.

*Slaven & Staker, Lant R. Slaven, Zane Grey Staker, W. Graham Smith, Jr.,* for defendant.

BROWNING, JUDGE:

Plaintiffs, Roy A. Ison and others are the owners of the surface of approximately one acre of land situate in Magnolia District, Mingo County, West Virginia, and seek in this action of trespass on the case to recover of the defendant, Daniel Crisp Corporation, damages for the casting of waste materials, refuse and water upon plaintiffs' property, both directly and indirectly as a result of the obstruction of a stream, as a consequence of defendant's strip and auger mining operation on adjacent property. Defendant filed its ''Special Plea No. 1'' to the declaration setting out in toto a deed from Red Jacket Coal Corporation, sometimes hereinafter referred to as Red Jacket, by which plaintiffs acquired their title to the property, and asserting that under the reservations and covenants contained therein, plaintiffs are precluded from any recovery in the instant action. The pertinent portions of such deed are as follows:

"* * *

"There are excepted and reserved unto the said

party of the first part, its successors, lessees, licensees and assigns, the following:

"(1) All estates in said lot except the surface, including in the estates hereby excepted and reserved, but not limited to, all the coal * * * together with full and complete rights and privileges of every kind for prospecting for, mining, boring for and removing the same, and with the perpetual right and easement to construct, maintain and use underground haulways * * * and passages through and under said lot for transporting and hauling coal * * * by the said party of the first part its lessees, licensees, successors and assigns, from said lot, as well as from any other lands whatsoever, and without liability for loss or damage to the surface of said lot or to any buildings or structures at any time placed thereon, or for the diversion of any surface or subterranean water course or courses in any way or manner caused by or resulting from the use, exercise, operation and enjoyment of the estates hereby excepted and reserved.

"* * *

"(4) It is understood that coal mining operations will be conducted by the party of the first part, its lessees, licensees, successors or assigns, in the vicinity of the said Subdivision and of the lot hereby conveyed. Said party of the first part therefore excepts and reserves unto itself, its successors, lessees, licensees and assigns, the right and privilege of conducting mining, operations and incidental activities in the vicinity of the said Subdivision and the lot hereby conveyed; and said parties of the second part for themselves and their successors in title as to the surface of said lot *hereby waive and relinquish all claims or demands for damages which they * * * may now or hereafter have by reason of any such coal mining operations and incidental activities, including, but not restricted to, all claims or demands for damages arising from noise, vibrations, the pollution or diversion or obstruction of streams, the pollution of air, or the emission of dust, smoke, fumes or noxious gases.*" (Italics supplied)

The deed then provides that such reservations and covenants shall be deemed covenants running with the land and "shall inure to the benefit of the said party of the first part, its lessees, licensees, successors and assigns."

Plaintiffs replied to said "Special Plea No. 1" admitting their derivation of title under the deed alleged, but alleged that subsequent to the execution of said deed Red Jacket Coal Corporation entered into an agreement with defendant, whereby defendant, for valuable consideration, agreed to mine and remove by auger mining methods all of the mineable and merchantable coal from certain lands belonging to Red Jacket, including land adjacent to the plaintiffs', which agreement included the following provision:

"FIVE:—Mining Requirements—Inspection

"It is understood and agreed as follows, to-wit:

"* * *

"B. The locations of all dumps and the disposal of all refuse or waste material shall be so placed as to avoid its falling into or being carried into any stream of water where avoidable, *it being understood and agreed that Contractor* the [defendant herein] *hereby assumes all liability for any damage caused to surface landowners, adjacent landowners or riparian owners by reason of the said disposal of said refuse or waste material, or by reason of its mining operations hereunder.*" (Italics supplied)

"* * *

"ELEVEN: Risks Involved—Indemnity—Insurance

"The parties hereto fully understand that the very nature of mining operations and the party of the second part's work hereunder involves some hazard of injury or death to the person or damage to the property, and the party of the second part therefore agrees that the party of the first part hereto shall not be liable for, and the party of the second part shall indemnify the party of the first part hereto against liability resulting from any death or injury to person or damage or loss to property that may be sustained by any person, firm or corporation whomsoever as the result of the work of the party of the second part and its operations hereunder, unless resulting from the wanton and wilful act of the party of the first part hereto, or its agents or employees.

"The party of the second part shall carry and maintain in force at all times, on each motor truck and vehicle used wholly or partly in its work hereunder,

and on its operations generally hereunder, a proper policy or policies of comprehensive liability insurance protecting with personal injury and death limits of $100,000.00 and $200,000.00, and property damage limit of $10,000.00 both the party of the second part and the party of the first part hereto against loss."

"* * *

Plaintiffs' replication then alleges that their deed from Red Jacket was one of scores of like deeds made by Red Jacket, the greater number of which, like plaintiffs', were made to employees of Red Jacket and that the above quoted provision of "FIVE (B)" was incorporated in the agreement between Red Jacket and defendant in furtherance of Red Jacket's desire to protect the properties theretofore conveyed to its employees from all damages resulting from the mining operations of defendant under its agreement with Red Jacket.

Defendant demurred to plaintiffs' replication on the grounds: (1) the provisions of the agreement between Red Jacket and defendant do not alter or impair the pre-existing reservations and provisions in Red Jacket's deed to plaintiffs and defendant is immune from liability thereunder as a licensee and assignee of Red Jacket; (2) the provisions of the agreement do not manifest any intention by Red Jacket to protect the properties theretofore conveyed to its employees, but, even if they did, such unilateral intention on the part of Red Jacket could not alter or control the true construction of the agreement; (3) the liability assumed by defendant under "FIVE (B)" of the agreement was solely potential "legal" liability, and such "legal" liability could never arise in favor of the plaintiffs in the light of the provisions in their deed; (4) the language of "FIVE (B)" was incorporated in the agreement solely for the benefit and protection of Red Jacket; and (5) the agreement is to be construed solely in accordance with its language in the light of the actual facts set out in the replication and not by expresssions of opinion contained therein.

The Circuit Court of Mingo County overruled defendant's demurrer to the replication and on its own motion, and the joint motion of the parties, certified the questions arising thereon to this Court.

It is obvious, and apparently conceded by counsel for plaintiffs, that the defendant is immune from this action, by virtue of being "successors, lessees, licensees and assigns," of the Red Jacket Coal Corporation, from all claims "for damages arising from * * * the pollution or diversion or obstruction of streams," under the reservation contained in the deed from Red Jacket Coal Corporation to the plaintiffs. Plaintiffs rely, as they must, upon Section "FIVE (B)" of the agreement between Red Jacket and the defendant, and this language thereof is the basis for the instant action against the defendant: "* * * it being understood and agreed that Contractor hereby assumes all liability for any damage caused to surface landowners, adjacent landowners or riparian owners by reason of the said disposal of said refuse or waste material, or by reason of its mining operations hereunder." The right of the plaintiffs to maintain this action in tort is predicated solely upon the allegation that the language contained in Section "FIVE (B)" of the contract was made for their benefit, and therefore, as third party beneficiaries to that contract, they may waive the contract and maintain this action in tort.

It is contended by counsel for the plaintiffs that inasmuch as Red Jacket had already rendered itself immune from liability to the plaintiffs under the reservations in its deed, it had no need for any indemnity undertaking on the part of defendant in that respect, and, if Section "FIVE (B)" of the contract was not specifically included therein to impose a liability on defendant for the benefit of the plaintiffs, it is superfluous because of the clear provision of section "ELEVEN" of the contract between Red Jacket and Daniel Crisp Corporation, which provides that "the party of the second part shall indemnify the party of

the first part hereto against liability resulting from any death or injury to persons or damage or loss to property that may be sustained by any person, firm or corporation whomsoever as the result of the work of the party of the second part and its operations hereunder, * * *.'' However, the pleadings show that many of the lots or parcels of land adjacent to the property holdings of Red Jacket were owned at the time of this contract by persons other than grantees of Red Jacket and the language in ''FIVE (B)'' indicates clearly that Red Jacket was protecting itself against damage not only to its grantees but to ''surface landowners, adjacent landowners or riparian owners''. The rule with reference to third party beneficiaries to a contract is state in 12 Am. Jur., Contracts, at page 832: ''The question whether a contract was intended for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made. Ordinarily, it is sufficient if the contract was evidently made for the benefit of the third person. A provision in a contract that it was made for the benefit of a third person or that he should have the right to enforce the same would clearly indicate the intention of the parties that the promise should inure to the benefit of the third person. But it has been observed that inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration. * * *''

The following statement is contained in the opinion of *German Alliance Insurance Co. v. Home Water Supply Co.*, 226 U.S. 220, 57 L. Ed. 195, 33 S. Ct. 32, 42 L.R.A. (NS) 1000, decided by the Supreme Court of the United States: ''* * * But even where the right is most liberally granted it is recognized as an exception to the general principle, which proceeds on the legal

and natural presumption, that a contract is only intended for the benefit of those who made it. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit. * * *'' This language was contained in the contract construed by this Court in *United Dispatch v. Albrecht Co.*, 135 W. Va. 34, 62 S.E. 2d 289: The contractor ''shall be responsible for all damages to persons that occur as a result of his fault or negligence in connection with the prosecution of the work. * * * the contractor shall be responsible for all loss or destruction of or damage to property that occurs as a result of his fault or negligence in connection with the prosecution of the work, * * *'' In that case this Court held that a third party who was damaged as a result of the construction work of the contractor was not entitled to recover and in the opinion said: ''* * * we can reach no conclusion except that it was made for the sole benefit of the contracting parties. The provisions relied upon by plaintiff as giving it a right of action on the contract were intended for the benefit and protection of the Government of the United States of America and not for the sole benefit of the plaintiff or for the sole benefit of a class of which plaintiff is a member. * * *''

It is the view of this Court that all of the provisions of Sections ''FIVE (B)'' and ''ELEVEN'' of the contract between Red Jacket Coal Corporation and defendant were made for the benefit of Red Jacket. There is nothing contained in the language of either of those sections of the contract indicating that Red Jacket intended that the benefits thereof should accrue to any third party. If all of the parties against which protection was sought had been grantees of Red Jacket, the argument would be more feasible that Red Jacket was attempting to, and did, extend the benefits of the contract to those parties. However, it is not confined to the employees, former employees or grantees of Red Jacket. On the contrary, it includes ''all surface land-

owners, adjacent landowners or riparian owners'' and the record shows that many of those persons were not grantees of Red Jacket. It is true, as contended by plaintiffs, that Section ''FIVE'' is entitled ''Mining Requirements—Inspection'' and that under that title there is a specific provision that the defendant ''assumes all liability for any damage caused to surface landowners, adjacent landowners or riparian owners by reason of the said disposal of said refuse or waste material, * * *'' which is the basis of this action by plaintiffs. The provisions of Section ''ELEVEN'' are more general and probably would protect Red Jacket against the possible liability which is specifically provided for in Section ''FIVE (B)''. Even so, the specific provisions of Section ''FIVE (B)'' are not rendered ambiguous by the general provisions of Section ''ELEVEN''.

A contract made for the benefit of a third party must have the assent of both parties to the contract. It would not be enough to surmise or speculate from the language used in the contract between Red Jacket and defendant that the former desired to protect its employees and former employees to whom it had conveyed tracts of surface from its vast real estate holdings in Mingo County. From the language used it also must be found that the defendant agreed that the plaintiffs and others similarly situate should benefit from the provisions of the contract. Both Red Jacket and the defendant were immune from any kind of legal action by the plaintiffs or those similarly situate as a result of ''the pollution or diversion or obstruction of streams,''. To hold that Red Jacket and the defendant voluntarily contracted to give up this immunity and to confer upon the plaintiffs and those similarly situate the right of action which they are attempting to prosecute would call for language overcoming the ''strong presumption'' that ''people usually stipulate for themselves, and not for third persons''. The use of the word ''liability'' in Section ''FIVE (B)'' and the word ''indemnify'' in Section ''ELEVEN'', although such

terms are not synonymous, does not have the effect as contended by plaintiffs, of showing an intent to make the plaintiffs third party beneficiaries under the language of Section "FIVE (B)". It was not necessary for the contracting parties to confer a right of action upon "surface landowners, adjacent landowners or riparian owners" who were not grantees of Red Jacket and if it had been the intention of the parties to divest themselves of the immunity from legal action with which they were clothed by reason of the reservations in the deeds from Red Jacket it would have been a simple matter to have said so and thereby confer upon plaintiffs and others similiarly situate the same rights which other landowners possessed. It is significant that no such language is found in that section or elsewhere in the contract.

For the reasons heretofore stated, the action of the Circuit Court of Mingo County in overruling the defendant's demurrer to the replication of the plaintiffs is reversed.

*Ruling reversed.*