549 S.E.2d 266

EASTERN STEEL CONSTRUCTORS, INC., a Maryland Corporation Doing Business in the State of West Virginia, Plaintiff Below, Appellant,

v.

The CITY OF SALEM, a Municipal Corporation; and Kanakanui Associates, a West Virginia Corporation; and Unidentified John Doe Defendants, Defendants Below, Appellees,

and

The City of Salem, a Municipal Corporation, Third–Party Plaintiff Below, Appellee,

v.

Old Republic Surety Company, a Corporation Domiciled in the State of Wisconsin, Third–Party Defendant Below, Appellee.

No. 28202.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2001.

Decided Feb. 9, 2001.

Dissenting Opinion of Justice Maynard July 2, 2001.

Concurring Opinion of Justice Starcher July 10, 2001.

Gary S. Wigal, Gianola, Barnum & Wigal, Morgantown, for the Appellant.

James C. Higgins, Dennis V. Garrison, III, Rist, Higgins & Associates, P.L.L.C., Beckley, for Appellee Kanakanui Associates.

DAVIS, Justice.

Eastern Steel Constructors, Inc., a contractor, appeals an order of the Circuit Court of Harrison County granting summary judgment in favor of Kanakanui Associates, a design professional, as to Eastern Steel Constructors' claims for professional negligence, implied warranty of plans and specifications, and as a third-party beneficiary to a contract between Kanakanui Associates and the City of Salem, West Virginia. The circuit court rejected the claim for professional negligence based upon its conclusion that, because Eastern Steel Constructors' sought only economic damages, this cause of action could be maintained only as a cause of action in contract. With respect to the implied warranty claim, the circuit court reasoned that absent a contract between the parties, there was no duty owed. Finally, the circuit court found that Eastern Steel Constructors' was not a third-party beneficiary of the contract between Kanakanui Associates and the City of Salem. After reviewing the parties briefs, the record submitted on appeal, and the relevant law, we find that a contractor may assert a negligence cause of action against a design professional seeking purely economic damages even in the absence of privity of contract, that there exists an implied warranty of plans and specifications that inures to a contractor in the absence of a contract, and finally, that Eastern Steel Constructors' failed to establish any evidence supporting its third-party beneficiary claim.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The City of Salem, West Virginia (hereinafter "Salem"), a defendant and third-party plaintiff below and an appellee herein, entered into a contract with Kanakanui Associates (hereinafter "Kanakanui"), also a defendant below and appellee herein, under which Kanakanui was to provide engineering and architectural services for certain improve-

ments to Salem's existing sewer system, including the design of a new sewage treatment plant to be built under one construction contract, and of two sewer lines to the new plant that were to be built under two additional construction contracts. Kanakanui created particular documents, namely plans and specifications, to be used to solicit bids from interested construction companies in connection with the three separate contracts, and to be further used by the successful bidders in constructing the project. After the completion of the bidding process, Eastern Steel Constructors, Inc. (hereinafter "Eastern"), plaintiff below and appellant herein, was awarded a contract for the construction of one of the sewer lines to the new plant.[1]

Eastern contends that, after beginning construction on the project, it experienced significant delays caused by sub-surface rock conditions and existing utility service lines that had not been disclosed in the documents prepared by Kanakanui. Kanakanui submits that under the contract between Salem and Eastern, Eastern was "to be responsible for the installation of the facilities *regardless of the type, nature, or quantity of subsurface conditions, including rock, on the Project.*" (Emphasis added).

As a result of the delays encountered in the project, Eastern asserts, it incurred substantial actual and consequential damages. In addition, Eastern maintains that Kanakanui failed to properly administer and manage the project, which, according to Eastern, caused it further financial damage.

Eastern subsequently filed tort actions against both Salem and Kanakanui for its damages. Eastern's complaint contained three allegations that involved Kanakanui: (1) that Kanakanui had been negligent in its provision of construction engineering services, consultation, project inspection, project management, and project administration; (2) that both Salem and Kanakanui breached an implied warranty of plans and specifications; and (3) that Eastern was entitled to damages as a third-party beneficiary of the contract between Salem and Kanakanui.

Kanakanui responded with a motion for summary judgment pursuant to Rule 56(b) of the West Virginia Rules of Civil Procedure. Following a hearing on Kanakanui's motion, the Circuit Court of Harrison County, by order entered November 2, 1999, granted the motion. In reaching its conclusion that summary judgment should be awarded in favor of Kanakanui, the circuit court found that Kanakanui's motion presented two issues of law. First, whether the execution and rendering of a contract between an engineer/architect and an owner for the design, plans, and specifications of a project imports a duty from the engineer/architect to a contractor constructing part of the project under a separate contract with the owner. If the answer to this legal question is affirmative, the circuit court observed, then subsequent questions of whether such a duty conveys to the contractor a right to maintain actions against the engineer/architect for negligence in performing its contract obligations and for breach of an implied warranty of plans and specifications must be addressed. The second legal issue identified by the circuit court was whether a construction contractor hired by an owner has a third-party beneficial interest arising from a contract between an engineer/architect and the owner, to which the construction contractor was not a party, such that the construction contractor may institute an action against the engineer/architect for its failure to properly render the services contracted. After identifying these issues, the circuit court concluded, as to the first issue, that

> the prevailing law in West Virginia limits the recovery of a building contractor to an action for economic damages against the owner as an action in contract only, and that there is not a duty owed by the engineer/architect to the building contractor regarding the plans, drawings and specifications, the adequacy or inadequacy of any or all of them and for the administration of the contract, under the engineer/architect's contract to and for the owner.

With regard to the second issue, the circuit court concluded "that the building contractor

---

1. Contracts for the construction of the sewer treatment plant and the other sewer line were awarded to parties other than Eastern.

is precluded by West Virginia Code § 55–8–12[2] from maintaining any claim as a party with a beneficial interest in the contract between the Owner and the Engineer/Architect because the contractor was not specifically identified and the action instituted was in tort." (Footnote added). It is from this order that Eastern now appeals.

## II.

## STANDARD OF REVIEW

■ It is well established that our review of a grant of summary judgment is de novo. " 'A circuit court's entry of summary judgment is reviewed de novo.' Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 524 S.E.2d 688 (1999). In conducting our de novo review of the circuit court's ruling, we must consider the following standard for granting summary judgment in the first instance:

> "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 506 S.E.2d 578 (1998). With these standards as our guide, we now consider the issues raised in this appeal.

## III.

## DISCUSSION

**A. Design Professional's Liability to Contractor For Purely Economic Damages Resulting from Professional's Negligence**

The first question raised in this appeal is whether there exists in West Virginia a cause of action sounding in negligence whereby a construction contractor may recover damages for purely economic losses from a design professional (e.g. architect or engineer) in the absence of a contract between the contractor and the design professional. The trial court concluded that such a cause of action may be pursued only as an action in contract law.[3] We disagree.

■ This Court previously addressed the question of whether a claim for negligence may lie in the context of the construction industry where there is no contract between the parties to a dispute in the case of *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). *Sewell* involved homeowners (the Sewells) who discovered latent defects in their home that allegedly resulted from negligence on the part of the construction contractor who had built the home. The defects manifested themselves in substantial flooding of the home. The Sewells had not purchased the home directly from the contractor, however. Instead, the home had initially been sold by the contractor to another family who subsequently sold it to the Sewells. Consequently, there was no contract between the Sewells and the contractor. The Sewells nevertheless sued the contractor, in part, for his alleged negligence in building the house. The circuit court dismissed the Sewell's negligence claim against the contractor, presumably based upon a lack of privity between them. In reversing the circuit court's dismissal, this Court held: "[i]n the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of *duty* which results in an injury to others." Syl. pt. 2, *Sewell* (emphasis added).

For the purposes of the instant case, then, *Sewell* instructs us that Eastern may properly assert a cause of action for negligence

---

**2.** West Virginia Code § 55–8–12 (1923) (Repl. Vol.2000) states:

> If a covenant or promise be made for the *sole* benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him

only, and the consideration had moved from him to the party making such covenant or promise.
(Emphasis added).

**3.** There was no contract entered between Eastern and Kanakanui.

against Kanakanui if it can be established that Kanakanui owed a duty of care to Eastern. *See also* Syl. pt. 3, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000) (" ' "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981).' Syl. Pt. 4, *Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431 (1995).").

 With regard to the existence of a duty of care, the *Sewell* Court further held, in Syllabus point 3,

> [t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

179 W.Va. 585, 371 S.E.2d 82. The *Sewell* Court concluded that it was foreseeable to the contractor when he constructed the house that there would be subsequent purchasers. Therefore, the Court reasoned, the contractor had " 'a common law duty to exercise reasonable care and skill in the construction of a building . . . [and a] subsequent homeowner can "maintain an action against a builder for negligence resulting in latent defects which the subsequent purchaser was unable to discover prior to purchase." ' " *Id.* at 588, 371 S.E.2d at 85 (citing *Johnson v. Graham*, 679 P.2d 1090 (Colo.Ct.App.1983), *rev'd on other grounds, Tri–Aspen Constr. Co. v. Johnson*, 714 P.2d 484 (Colo.1986)).[4] In reaching its conclusion, the *Sewell* Court was not, however, required to address the general rule precluding economic damages in a cause of action, such as the case at bar,

where negligence is claimed in the absence of either physical injury, property damage or a contract.

 More recently, in a case that did involve a plaintiff seeking purely economic damages as a result of the defendant's negligence, this Court conducted an elaborate review of the determination of the existence of a duty of care. *See Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). The *Aikens* Court began by noting that the question of whether a duty exists is a question of law for the court to resolve: "[t]he determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Syl. pt. 5, *Aikens*. In defining the proper considerations for ascertaining the existence of a duty, we observed in *Aikens* that, in addition to the primary question of foreseeability of risk in discerning the existence of a duty, consideration must also be given to " 'the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant.' " *Aikens*, 208 W.Va. at 491, 541 S.E.2d at 581 (quoting *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983)).

The *Aikens* Court cited numerous cases wherein causes of action for negligence were rejected where the injury was purely economic, thereby evidencing that courts have generally declined to allow the recovery of solely economic damages in negligence actions. In this regard, the *Aikens* Court observed that allowing plaintiffs to recover economic damages resulting from another's negligence, in the absence of physical injury, property damage or a contract, may result in an over-expansion of the concept of duty thereby subjecting defendants to virtually limitless liability that, in addition to being

---

4. Analogously, we have also recognized that the designer of an access road or encroachment onto a public highway may be liable to a third-party for personal injuries resulting from the designer's negligence:

> An independent contractor, who claims special skill or knowledge to plan and design an access road and encroachment onto a public

highway, and negligently prepares such a plan and design, may be liable to persons injured as a proximate result of such negligence before or after the plan or design has been accepted by the owner or employer of the independent contractor and regardless of privity.

Syl. pt. 5, *Louk v. Isuzu Motors, Inc.*, 198 W.Va. 250, 479 S.E.2d 911 (1996).

disproportionate to a defendant's negligent act or omission, may increase litigation to a level that courts would be unable to manage.

Having established the existence of a well settled general rule against permitting recovery in negligence for purely economic damages, however, the *Aikens* Court acknowledged that a minority of jurisdictions have permitted such recovery "under certain limited circumstances." 208 W. Va. at 497, 541 S.E.2d at 587. After a thorough review of case law from jurisdictions strictly adhering to the general rule of no economic recovery, as well as that from jurisdictions that have developed and applied exceptions to that general rule in order to permit economic recovery, we expressed "our belief that a hybrid approach must be fabricated to authorize recovery of meritorious claims while simultaneously providing a barrier against limitless liability." *Aikens*, 208 W.Va. at 500, 541 S.E.2d at 590. We went on to explain that "[t]he *common thread which permeates the analysis* of potential economic recovery in the absence of physical harm is the recognition of the underlying concept of duty. Absent some *special relationship*, the confines of which will differ depending upon the facts of each relationship, there simply is no duty." *Id.* (emphasis added). The Court further explained that

> [t]he existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

*Id.* at 499, 541 S.E.2d at 589. While the economic loss asserted in the *Aikens* case involved a disruption to commerce,[5] and the case did not involve the construction industry, we nevertheless adhere to our belief, expressed in that opinion, that recovery of economic damages should be allowed in certain meritorious claims when an adequate barrier against limitless liability, such as the existence of a special relationship, can be identified:

> [W]here a special and narrowly defined relationship can be established between the tortfeasor and a plaintiff who was deprived of an economic benefit, the tortfeasor can be held liable. In cases of that nature, the duty exists because of the special relationship. The special class of plaintiffs involved in those cases were particularly foreseeable to the tortfeasor, and the economic losses were proximately caused by the tortfeasor's negligence.

*Aikens*, 208 W.Va. at 500, 541 S.E.2d at 590. To this end, we note that, for reasons similar to those we expressed in *Aikens*, numerous courts have allowed the recovery of economic damages by a contractor for the negligence of a design professional where there was no contract between the two and where there was no physical injury or property damage.

For example, in the South Carolina case of *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995), a contractor filed an action, which included charges of negligence, against a design engineer seeking only economic damages. The Supreme Court of South Carolina concluded that the rule against economic recovery applied only " 'where the duties are created solely by contract.' " *Griffin*, 320 S.C. at 54, 463 S.E.2d at 88 (quoting *Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 299 S.C. 335, 347, 384 S.E.2d 730, 737 (1989)). Where there is

---

**5.** The *Aikens* Court limited its resolution to the specific factual circumstances before it and held in Syllabus point 9:

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, *or some*

*other special relationship* between the alleged tortfeasor and the individual who sustains purely economic damages *sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff* and that the injury complained of was clearly foreseeable to the tortfeasor.

(Emphasis added).

no contract between the parties, the court explained, a cause of action in tort may lie when "there is a *special relationship* between the alleged tortfeasor and the injured party" giving rise to a duty that is subsequently breached by the defendant. *Id.* at 55, 463 S.E.2d at 88 (emphasis added).[6] The court concluded that

> [i]n the case *sub judice,* Engineer designed the project specifically for the [Owner]. Engineer supervised the construction. Engineer had the right, among other rights, to inspect the construction and to halt construction. Under these facts, Engineer owed a duty to the contractor not to negligently design or negligently supervise the project.

*Id.* at 56, 463 S.E.2d at 89.

*Guardian Construction Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1381 (Del.Super.Ct.1990), is also analogous to the case *sub judice.* In *Guardian,* contractors asserted a negligence claim against a design engineer alleging that miscalculations by the engineer resulted in additional labor and equipment costs and lost profits. In concluding that the contractors' negligence claims were cognizable, the court commented:

> Where ... *the relationship or nexus between the supplier and the user of certain types of information is, in one way or another sufficiently close,* some Courts have been willing to extend liability for economic loss in the absence of direct contractual privity. These cases suggest that the controlling question is whether it was *foreseeable* to the negligent supplier of information that the injured party would rely on the information. Under this line of

cases, if reliance was foreseeable, a legal duty was found to exist which would support liability for economic losses even in the absence of contractual privity....

Other cases take the foreseeability requirement a step farther and require that the faulty information be intended by its negligent supplier to be specifically relied upon by a particular party or a settled class of parties before economic damages are recoverable on a negligence theory....

*Guardian,* 583 A.2d at 1382 (citations omitted) (first emphasis added). The *Guardian* Court ultimately relied on the Restatement (Second) of Torts § 552 (1977),[7] as well as case law from other jurisdictions, to conclude that, under the circumstances of the case before it, the contractor's action in negligence was not barred by a lack of privity notwithstanding the fact that the damages sought were purely economic. The Court explained:

> Modern legal authority supports the proposition that if, in the course of its business, [a design professional] negligently obtained and communicated incorrect information specifically known and intended to be for the guidance of [contractors], and if it is specifically known and intended that [the contractors] would rely in calculating their project bids on that information, and if [the contractors] rely thereon to their detriment, then [the design professional] should be liable for foreseeable economic losses sustained by [the contractors] regardless of whether privity of contract exists.

---

6. Footnote one of the *Griffin* case contains a substantial list of citations from courts concurring with this view.

7. The Restatement (Second) of Torts § 552 (1977) states:
   § 552. Information Negligently Supplied for the Guidance of Others
   (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
   (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
   (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Guardian,* 583 A.2d at 1386. The Court further observed the close nexus between the negligence and the economic harm suffered: "the use of the information negligently supplied was not an indirect or collateral consequence ... it was the end and aim of the transaction." *Id.*

Another like case is *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984). In *Donnelly* a construction contractor sued a design professional for negligence. The contractor claimed that it had relied upon plans, specifications, and a site plan prepared by the design professional to calculate its bid on a project. The contractor was awarded the project based upon its bid amount. However, once construction began, the contractor discovered that the aforementioned documents contained substantial errors that resulted in increased costs to the contractor. In overturning a dismissal granted by the trial court, the Supreme Court of Arizona found that the absence of a contract between the contractor and the designer did not preclude the contractor's negligence action as privity was not required to maintain an action in tort.

> Rather, an action in negligence may be maintained upon the plaintiff's showing that the defendant owed a duty to him, that the duty was breached, and that the breach proximately caused an injury which resulted in actual damages.... Duty and liability are only imposed where both the plaintiff and the risk are foreseeable to a reasonable person.

*Donnelly,* 139 Ariz. at 187, 677 P.2d at 1295 (internal citation omitted). The Court elaborated:

> Design professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services.... When they are called upon to provide plans and specifications for a particular job, they must use their skill and care to provide plans and specifications which are sufficient and adequate.... This duty ex-

tends to those with whom the design professional is in privity, ... and to those with whom he or she is not....

*Id.* (internal citations omitted). Finally, the Court concluded that it was foreseeable that the contractor, who was "hired to follow the plans and specifications prepared by [the design professional], would incur increased costs if those plans and specifications were in error." *Id.* at 187–88, 677 P.2d at 1295–96. *See also A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973) (concluding that third-party general contractor could maintain negligence action against architect in absence of privity); *National Sand, Inc. v. Nagel Constr., Inc.,* 182 Mich.App. 327, 451 N.W.2d 618 (1990) (acknowledging, with approval, that Court of Appeals of Michigan had allowed a contractor to maintain a negligence action against a project engineer in the absence of privity of contract); *Bacco Constr. Co. v. American Colloid Co.,* 148 Mich.App. 397, 416, 384 N.W.2d 427, 434 (1986) (allowing contractor's claim of negligence against engineer based upon foreseeability that "an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself. The risk of harm would include the financial hardship created by having to cure the defects which may very well not be caused by the contractor."); *Jim's Excavating Serv., Inc. v. HKM Assoc.,* 265 Mont. 494, 506, 878 P.2d 248, 255 (1994) (holding that "a third party contractor may successfully recover for purely economic loss against a project engineer or architect when the design professional knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied."); *Reliance Ins. Co. v. Morris Assocs., P.C.,* 200 A.D.2d 728, 607 N.Y.S.2d 106 (1994) (affirming lower court's denial of defendant design professional's motion to dismiss complaint as to counts of negligence and professional malpractice asserted by contractor, notwithstanding absence of privity).[8]

---

**8.** *But see Blake Constr. Co., Inc. v. Alley,* 233 Va. 31, 353 S.E.2d 724 (1987) (concluding that contractor could not recover economic losses for architect's negligent performance of professional

services rendered pursuant to contract between architect and owner); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wash.2d 816, 881 P.2d 986 (1994) (affirming lower court rul-

We are persuaded by our prior analysis in *Aikens v. Debow*, and the foregoing authority from other jurisdictions allowing contractors to assert negligence causes of action to recover economic damages in the absence of contractual privity, consequently we expressly hold that a design professional (e.g. an architect or engineer) owes a duty of care to a contractor, who has been employed by the same project owner as the design professional and who has relied upon the design professional's work product in carrying out his or her obligations to the owner, notwithstanding the absence of privity of contract between the contractor and the design professional, due to the special relationship that exists between the two. Consequently, the contractor may, upon proper proof, recover purely economic damages in an action alleging professional negligence on the part of the design professional.

We believe that this resolution adequately balances the need to permit "recovery of meritorious claims while simultaneously providing a barrier against limitless liability." *Aikens*, 208 W.Va. at 500, 541 S.E.2d at 590. The contractor is a member of a limited class compiled of those contractors bidding on a particular project. Moreover, the facts that the contractor must rely on design documents to calculate his or her bid and, if successful in bidding, to construct the project, and may be further subject to oversight by the design professional during actual construction of the project, fulfills the requirement of the foreseeability of harm that would result from negligence on the part of the design professional. Finally, this resolution properly places the duty of care on the party who is in the best position to guard against the type of negligence herein asserted.

■ Having established that a design professional owes a duty of care to contractors, we endeavor to give some definition to that duty. We note that the exact nature of the specific duty owed by a design professional *may* be impacted by provisions contained in the various contracts entered among the parties (e.g. the contract between the owner and the design professional, and the contract between the owner and the contractor), provided that such contractual provisions do not conflict with the law. In addition, the duty of care may be further defined by rules of professional conduct promulgated by the agencies charged with overseeing the specific profession of which a defendant is a member. *See, e.g.*, West Virginia Rules of Professional Responsibility for Professional Engineers, 1A W. Va.C.S.R. § 7–1–16 et seq. (1993); [9] West Virginia Rules of Professional Conduct for Architects, 1A W. Va. C.S.R. § 2–1–9 et seq. (1998).[10] Consequently, we hold that when a special relationship exists between a design professional and a contractor, the specific parameters of the duty of care owed by the design professional to the contractor must be defined on a case-by-case basis. However, in general, the duty of care owed by a design professional to a contractor with whom he or she has a special relationship is to render his or her professional services with the ordinary skill, care and diligence commensurate with that rendered by members of his or her profession in the same or similar circumstances. *See, e.g., Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187, 677 P.2d 1292, 1295 ("Design professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services." (citation omitted)); *I.O.I. Sys., Inc. v. City of Cleveland, Texas*, 615 S.W.2d 786, 790 (Tex. Civ.App.1980) ("An engineer or an architect must use the skill and care in the perfor-

ing that a contractor could not recover purely economic damages from an architect in a tort action). For a discussion including citations to additional cases agreeing with this view, see *National Steel Erection, Inc. v. J.A. Jones Constr. Co.*, 899 F.Supp. 268 (N.D.W.Va.1995).

9. For example, 1A W. Va.C.S.R. § 7–1–16.3(b) (1993) states:

Registrants shall approve and seal only those design documents and surveys that *conform to accepted engineering standards* and safeguard

the life, health, property and welfare of the public.

(Emphasis added).

10. 1A W. Va.C.S.R. § 2–1–9.1.1 (1998) states:

In engaging in the practice of architecture, a registered architect shall act with reasonable care and competence, and shall apply the technical knowledge and skill which are ordinarily applied by registered architect [sic] of good standing, practicing in the same locality.

mance of his duties commensurate with the requirements of his profession, and is only liable for a failure to exercise reasonable care and skill commensurate with those requirements." (citations omitted)).

Having determined that a contractor may indeed maintain a cause of action for negligence seeking purely economic damages against a design professional where there is no privity of contract between the two, we conclude that the circuit court erred in granting summary judgment in favor of Kanakanui as to Eastern's claim of professional negligence.

### B. Design Professional's Liability to Contractor For Implied Warranty of Plans and Specifications

We next address the circuit court's award of summary judgment in favor of Kanakanui as to Eastern's claim for breach of an implied warranty of plans and specifications. As with Eastern's claim for professional negligence, the circuit court concluded that a claim for breach of implied warranty could be pursued only as an action sounding in contract. We again disagree.

■ In the sole Syllabus point of *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82 (1975), this Court held "[t]he requirement of privity of contract in an action for breach of an express or *implied* warranty in West Virginia is hereby abolished." (Emphasis added). While *Dawson* was a product liability case involving contaminated food purchased from a vending machine, we extended its holding into the realm of construction cases in *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). In *Sewell*, we concluded that a contractor's implied warranty of habitability and fitness extended to a used home purchased from a seller other than the contractor him or herself. By way of explaining our rationale for this conclusion, we observed that

"[t]he purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible . . . .

No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him."

*Sewell*, 179 W.Va. at 589, 371 S.E.2d at 86 (quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo.1979)).

■ Due to the special relationship that exists between a design professional and a contractor, which is discussed in the preceding section of this opinion, we believe a similar conclusion is warranted in the case of an implied warranty of plans and specifications. While, in a technical sense, the plans and specifications are prepared for the owner of a project, a design professional nonetheless knows that they will be relied upon by contractors vying for the project, and ultimately will be further relied upon by the contractor who is hired to perform the actual work. Furthermore, errors and inadequacies in the specifications will foreseeably work to the financial detriment of the contractor. Consequently, an innocent contractor should be protected by a warranty, and design professionals thereby held accountable for their work.

We are not alone in concluding that a warranty of plans and specifications should extend to benefit of a contractor. The Supreme Court of South Carolina, in *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995), concluded that a trial court had erred in dismissing a contractor's warranty claims based upon lack of privity between the contractor and the engineer who produced the subject plans and specifications. The *Griffin* Court explained that, pursuant to existing South Carolina precedent, "one who [undertakes] to design and oversee a construction project for another impliedly

warrant[s] the design and quality of construction despite the lack of privity between the parties." 320 S.C. at 56, 463 S.E.2d at 89 (citing *Hill v. Polar Pantries,* 219 S.C. 263, 64 S.E.2d 885 (1951)). The Court also reasoned that "[i]f a party furnishes plans and specifications for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view" notwithstanding the absence of privity. *Id.* (quoting *Beachwalk Villas Condominium Ass'n v. Martin,* 305 S.C. 144, 146, 406 S.E.2d 372, 374 (1991)).

Arizona has reached a similar conclusion. In *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* the Supreme Court found the trial court's dismissal of a claim for breach of implied warranty of plans and specifications on lack of privity grounds was in error. 139 Ariz. 184, 677 P.2d 1292. The *Donnelly* Court stated, without elaboration, that "[a] claim for breach of a common law warranty does not require privity." *Id.* at 189, 677 P.2d at 1297 (citing *Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982)). Finally, the court identified the scope of such a warranty by explaining that design professionals "do not 'warrant' that their work will be 'accurate,' . . . . Rather, . . . they 'warrant' merely that they have exercised their skills with care and diligence and in a reasonable, non-negligent manner." *Id.* (internal citation omitted).

Following existing West Virginia precedent, and the cases discussed above, we hold that a design professional (e.g. an architect or engineer) providing plans and specifications that will be followed by a contractor in carrying out some aspect of a design, impliedly warrants to the contractor, notwithstanding the absence of privity of contract between the contractor and the design professional, that such plans and specifications have been prepared with the ordinary skill, care and diligence commensurate with that rendered by members of his or her profession.

Because we conclude that a contractor may pursue a claim for the breach of an implied warranty of plans and specifications in the absence of privity, we find that the circuit court erred in granting summary judgment to Kanakanui as to Eastern's claim for breach of implied warranty.

**C. Design Professional's Liability to Contractor As a Third-party Beneficiary to Contract Between Design Professional and Project Owner**

▉ Finally, we address the circuit court's award of summary judgment in favor of Kanakanui as to Eastern's third-party beneficiary claim. The circuit court concluded that Eastern was precluded from pursuing this claim as it was not a third-party beneficiary of the contract between Salem and Kanakanui as defined in West Virginia Code § 55–8–12 (1923) (Repl.Vol.2000), which states:

> If a covenant or promise be made for the *sole* benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

(Emphasis added).

The foregoing statute expressly allows a person who is not a party to a contract to maintain a cause of action arising from that contract only if it was made for his or her "sole benefit." We have repeatedly applied this statute and have consistently given force to the "sole benefit" requirement. In *Elmore v. State Farm Mut. Auto. Ins. Co.,* this Court rejected the argument that a third-party could assert a claim for breach of fiduciary duty against a tortfeasor's insurer finding that "[c]learly the insurance contract here was not made for the sole benefit of the plaintiff." 202 W.Va. 430, 438, 504 S.E.2d 893, 901 (1998).

We have similarly concluded that medical malpractice plaintiffs could not bring a direct action as third-party beneficiaries against a physician's liability insurer where it was not established that the insurance policy contained language bestowing a benefit on a third-person who was not a party to the contract. *Robinson v. Cabell Huntington Hosp., Inc.,* 201 W.Va. 455, 498 S.E.2d 27

(1997). In reaching its conclusions, the *Robinson* Court observed that " '[t]his Court has held that in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit.' " 201 W.Va. at 460, 498 S.E.2d at 32 (quoting *Woodford v. Glenville State College Hous. Corp.*, 159 W.Va. 442, 448, 225 S.E.2d 671, 674 (1976)). *See also United Dispatch v. E.J. Albrecht Co.*, 135 W.Va. 34, 46, 62 S.E.2d 289, 296 (1950) (concluding that "[t]he provisions relied upon by plaintiff as giving it a right of action on the contract were intended for the benefit and protection of [one of the contracting parties], and not for the *sole benefit* of the plaintiff or for the *sole benefit* of a class of which plaintiff is a member." (emphasis added)).[11]

With regard to making a determination of whether a plaintiff is a third-party beneficiary of a particular contract, we have held that:

> In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration.

Syl. pt. 2, *Ison v. Daniel Crisp Corp.*, 146 W.Va. 786, 122 S.E.2d 553 (1961). Eastern has failed to direct this Court to any language in the contract between Kanakanui and Salem that either expressly or impliedly declares an intent that the contract was for Eastern's *sole* benefit. While it is clear that the contracting parties knew the contract would result in professional work product by Kanakanui that would ultimately be *relied* upon by a construction contractor building the project, it is equally clear that the contract itself was for the benefit of the con-

tracting parties. Consequently, we find no error in the circuit court's grant of summary judgment on this ground:

## IV.

### CONCLUSION

For the reasons stated in the body of this opinion, the November 2, 1999, order of the Circuit Court of Harrison County is affirmed insofar as it granted summary judgment in favor of Kanakanui as to Eastern's claim as a third-party beneficiary, reversed insofar as it granted summary judgment for Kanakanui as to Eastern's claims for professional negligence and implied warranty, and remanded for additional proceedings not inconsistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.

MAYNARD, Justice, dissenting.

(Filed July 2, 2001)

I would affirm the circuit court's grant of summary judgment on behalf of Kanakanui Associates.

First, I agree with the circuit court that Eastern Steel Constructors' claim against Kanakanui for solely economic damages could be maintained only as a cause of action in contract, and not in tort. By holding otherwise, the majority unnecessarily extends the "special relationship" exception in *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000), to protect sophisticated commercial entities who are able to protect themselves from economic loss by contract.

In *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wash.2d 816, 881 P.2d 986 (1994), the Supreme Court of Washington held that the economic loss rule does not allow a general contractor to recover purely economic damages from a de-

---

**11.** Eastern urges this Court to rely on dicta contained in the case of *Woodford v. Glenville State College Housing Corp.*, 159 W.Va. 442, 225 S.E.2d 671 (1976), questioning a "restrictive interpretation" of W. Va.Code § 55–8–12 that gives effect to the word "sole," in order to find that Eastern may assert a third-party claim. We decline. Ignoring the word "sole" in W. Va.Code § 55–8–12 would not only place this Court in the

improper role of legislator, but would also require that we disregard our mandate to give effect to each part of a statute. *See State ex rel. Morgan v. Trent*, 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995) (" ' " 'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' " ' " (citations omitted)).

sign professional in tort. The Court explained:

> We so hold to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract. We hold parties to their contracts. If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. The construction industry in particular would suffer, for it is in this industry that we see most clearly the importance of the precise allocation of risk as secured by contract. The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract.

124 Wash.2d at 826–27, 881 P.2d at 992. Likewise, the Supreme Court of Virginia stated in *Blake Construction Co. v. Alley*, 233 Va. 31, 35, 353 S.E.2d 724, 727 (1987):

> The parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Their respective rights and duties are defined by the various contracts they enter. Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract. (Citation omitted).

I agree wholeheartedly with these courts. We should not intrude into commercial relationships, where all parties involved are able to conduct business on an equal footing, in order to relieve one of the parties of the consequences of a bad bargain. This is especially true when the Court resorts to a novel extension of the law to do so. If I had known that this is what the Court meant when it fashioned a special relationship exception to the economic loss rule in *Aikens*, I would have dissented in that case also.

For the same reasons, I would not allow Eastern Steel to bring an implied warranty claim against Kanakanui. I see no reason to extend the rule in *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82 (1975), to the instant set of facts. The plaintiff in *Dawson*

suffered acute food poisoning and gastroenteritis after purchasing from a vending machine a cheeseburger prepared on a bun containing mice feces. In *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988), *Dawson* was applied to protect subsequent home purchasers after latent defects resulted in significant damage to the home. These cases are in contrast to the instant one involving a claim for *purely* economic damages where the party allegedly injured could have contractually protected itself at the outset.

For the reasons stated above, I dissent to the majority opinion.

STARCHER, Justice, concurring.

(Filed July 10, 2001)

In *Aikens v. Debow*, 208 W.Va. 486, 502, 541 S.E.2d 576, 592 (2000), this Court took what I referred to as a "bold step forward" and recognized that a particular tortfeasor may owe a certain, clearly foreseeable party a duty of due care to avoid causing that party a "purely economic loss." Our law exists to provide remedies to those persons or entities who are injured, even when that "injury" is purely an economic loss, as a direct and proximate cause of a tortfeasor's carelessness.

I concur to the majority's opinion because it again represents a careful, well-reasoned step forward. The opinion demonstrates the principle that a defendant's duty toward a plaintiff is highly fact-dependent, and relative to the "circumstances of time, place, manner or person." Syllabus Point 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895).

The majority's opinion demonstrates that this Court cannot endeavor to predict every situation where a tortfeasor's actions may have an adverse effect on a party's economic interests, and when under *Aikens v. Debow* those actions may form the basis for liability. As I suggested in my concurrence to *Aikens*—and as the majority's opinion now makes crystal clear—the evaluation of whether a defendant in a particular case owed a plaintiff a duty of care to not cause the plaintiff an economic loss is a question for courts to consider on a case-by-case basis.

*See Aikens,* 208 W.Va. at 505, 541 S.E.2d at 595.

I agree with the majority's analysis of the circumstances of time, place, manner and people surrounding the designing of the sewer system by defendant Kanakanui Associates, and the subsequent reliance by plaintiff Eastern Steel Constructors upon the plans made by Kanakanui. It is reasonably foreseeable to the average person, even the absence of privity of contract, that a contractor may be economically harmed when a design professional carelessly drafts plans for a project. It was definitely foreseeable to Kanakanui that plaintiff Eastern—even though only theoretically known to Kanakanui when the plans were drafted—could be financially harmed by mistakes in the plans. Therefore, a "special relationship" existed between the drafter of the plans, and the people who were expected to rely on the plans. The defendant designer therefore owed the plaintiff contractor a duty to carefully conduct its craft so as to avoid inflicting foreseeable economic losses that could result from carelessly drafted plans.

I applaud the majority's exacting analysis of the instant case. I therefore respectfully concur.